Good morning, Your Honors. May it please the Court, my name is Matthew Matter and I'm counsel for the Plaintiff Appellants Bernadette Pauley and Thomas Clark in both matters, the Comedy TV and the Comics Unleashed matter before the Court. My associate, Degore Subramaniam, is here with me. I'd like to reserve seven minutes for reply. We're here today because a group of comedians who worked on these two shows produced back in 2007-2009 by the employer, Appellees, failed to pay millions of dollars in compensation and these employees were subject to a number of labor code violations. Appellants spent years complaining to their union, the Appellee SAG-AFTRA, who arbitrarily failed to pursue a meritorious grievance on their behalf. In response to the employee complaints, the union representatives often failed to respond to inquiries or then provided inaccurate information, misleading the comedians about the status of their compensation. On at least one occasion, a comedian was told by the director of television programming at SAG that the employer had paid compensation subject to, quote-unquote, an honor system. The most egregious part is that SAG-AFTRA arbitrarily allowed the statute of limitations period to run before initiating a grievance. And SAG-AFTRA's answering brief does not dispute this or offer any explanation for the delay in initiating a grievance. Because SAG-AFTRA exercised the exclusive control and authority to file a grievance, the union had prevented the employees from exhausting the grievance process. The appellants were forced to file the complaint in order to preserve their claims. Only after the appellants filed did SAG-AFTRA then initiate a grievance. However, by this point in time, SAG-AFTRA had already burned through a substantial portion of the statute of limitations period. And the employer, appellees, and SAG-AFTRA filed their motions to compel arbitration and their motion to dismiss. What am I supposed to be gleaning from everything you're telling me? What's the point of this? The point is, Your Honor, that it came to Judge Rial then. He says Rial. Judge Rial. You want to be sure in front of him you say Rial, not Rial. Yes, Your Honor. That the district court held that the union employee need not exhaust the grievance procedure where exhaustion would be futile or a union breached its duty of fair representation. One of my frustrations of this case, and I'll say very specifically and it doesn't affect what I'm going to do, what my own vote will be, but the opening brief was frustrating to me because it disregarded the reality of where the case was at the time. I mean, time marches on and something happened after the district court's order and before the opening brief. And you wouldn't have known it from reading the opening brief because there's never any mention of what happened in the ultimate grievance proceeding. Well, something did happen and it affects the case. So what should we do with it now? Well, Your Honor, as to the settlement of the claims in part, that doesn't affect the claims of the plaintiffs in this situation because they did not and could not have settled out all of the plaintiffs' claims because the statute of limitations period had been blown. Are you speaking now of the potential claim against just the union or both of the defendants? This would be as to both the defendants. So how do you have a claim against the producer? Well, because certain claims were outside of the collective bargaining agreement. The PAGA claims, the Labor Code Section 203, 2802, and 226 claims were not covered by the CBA. So they could not have been released by this agreement. And, for instance, the PAGA claim could not have been released or brought by the union because the PAGA cause of action requires the person bringing it to send a letter to the LWDA, the State of California, in order to authorize them to bring that claim. And in this situation, the union never sent that letter, so they couldn't bring that claim. My firm sent the letter. We were acting as the attorney generals of the State of California to bring that claim. So in no way could the union have released those claims. Additionally, the union couldn't. Their release, I guess that answers your question, is to the employers. Mr. Mattern, I take it that you and your opponents are in agreement that the scope of the authority of the union to settle is coterminous with the collective bargaining agreement. Is that right? I think that's a fair statement, Your Honor. Why? Why isn't the union authorized to settle claims beyond what the collective bargaining agreement sets forth? Well, I believe that the union members are only bound by the agreement that they have with the union. With the union, not the collective bargaining agreement. So I don't believe that even if, in fact, the union purportedly settled claims on behalf of the union members, then clearly the union members would still have a claim against the union. That may be true. But I was puzzled by the idea that the scope of authority of the union to settle claims of its members was somehow dependent on the contract which the union had with the employers. If that's not urged as an argument, pardon me for just interrupting you. No, Your Honor, we still believe that those claims that I just enumerated, the labor code claims and the pocket claims, were outside of the collective bargaining agreement and should not and could not have been settled by the union. I mean, that is our position. I understand your position. And those are all the statutory claims you say that even though the breach of contract claims and maybe even the tort claims could be settled, the statutory claims under the California Labor Code and the pocket claims could not be settled because there was no specific mention of that authority in the CBA. That's correct. Okay. And what the district court did was to ignore the authority that has been in place for almost 50 years. The district court cited the Maddox case, which was a 1965 case that predated the Vaca v. Sipes case, which carved out the exception that union employees could bring these types of duty of fair representation claims if the union's wrongful refusal to process the grievance occurred. And in this situation, you had exactly that, is that the union members were complaining since 2008 to the union to take steps to get their monies. And the union refused to do so for almost four years. At that point in time, futility is established. And I think the case law is very clear on that point, that the Glover case, which the court Judge Reel cited but I don't think followed, in that the Glover court said there's a flexible standard for the exhaustion requirement and it's subject to a number of exceptions for a variety of situations in which a doctrinaire application of the exhaustion rule would defeat the overall purposes of the federal labor relations policy. And in this situation, we have a very egregious breach of, you know, ten times people had emailed the director of television programming, David Brisbois, and he said that this is pursuant to an honor system. We're not necessarily going to have to or that you're not even due any money. So they were misleading their members. This is the kind of breach that calls out for the court to say that futility was clearly present here and that the union members should be allowed to bring their action in district court. I'd like to reserve the rest of my time, Your Honors, to... Before we start the clock, let me find out, come to the stand, is there any understanding as to who's talking and if so, for how long? Yes, Your Honor. I'm Ira Gottlieb. I represent SAG-AFTRA. I'm here with my partner, Robert Bush. We've agreed that I will have eight minutes and Mr. Brenner, who's representing the producers, will have seven. Okay. So why don't you put eight minutes on the clock? Thank you, Your Honor. Your Honor, may it please the court, we, in our view, the plaintiffs have pleaded themselves out of court by missing their opportunities to appropriately and timely challenge the union's actions. First, on the issue of exhaustion, they sued too early. While the grievance process was ongoing, the union actually submitted its grievances before the plaintiffs added the union as a defendant to this case. Could you keep your voice up, please? Yes. I'm sorry. They pleaded, the grievances were filed before the plaintiffs actually named the union as a defendant in the case, and they claimed that the union breached its duty of fair representation by late grievance filing, but the issue of lateness is one for an arbitrator. So there's no way to determine whether the lateness, if it existed at all, and we dispute whether there was any consequence anyway to the lateness, and certainly there was no arbitration decision talking about lateness or what a consequence of that lateness might have been. The district court didn't dismiss the action by saying it's supposed to be arbitrated. I mean, I'm not sure what you're telling me when you say that should be resolved by an arbitrator. Well, at the time, at the time the district court dismissed the case in December of 2013, the arbitration process was ongoing. Arbitration you mean between the union and the producer. Correct. I'm sorry. I thought you were referring to something different. Right. And that is the basis, the correct basis for the district court to dismiss because it lacked jurisdiction of the case at that point. Then after the district court ---- It lacked jurisdiction of all the claims of the plaintiff, including the statutory claims. Well, that, while the district court didn't reach that and we didn't really take a position on that. But let's talk about that because that would affect the result, would it not? It would. Are you in agreement with the plaintiffs that certain of those statutory claims, Labor Code 203, 2802, 226 and PAGA cannot be released by the union because the collective bargaining agreement does not specifically authorize arbitration as to statutory claims? Well, Your Honor, while we haven't, I think that's generally and broadly accurate and correct and the union's duty to pursue grievances is limited to the confines of the collective bargaining agreement. It's also true that in some cases there may be calculations of residuals because residuals obviously are something that the union can pursue under the collective bargaining agreement that may impact some of the statutory claims. And there may also be a preemption issue under 301, but that really is for the employer to talk about, I think. So, yes, generally speaking, I think that's correct that the union's duty of fair representation and its duty to pursue grievances is confined to what is in the collective bargaining agreement. And that, again, would be something an arbitrator would take a look at to determine what the... Now, here I'm lost again. What arbitrator would be taking a look at what? If we had gone to arbitration, a decision, there could have been an argument made by an employer about what the scope of the claims should be and what is properly arbitrable and what is... Is it your position that the arbitrator could say that absent mention of statutory claims in the collective bargaining agreement, statutory claims were arbitrable? I would not expect the arbitrator to say that. Right. But the issue... Not even with the Supreme Court, right? But that's right. But the arbitrator... So that means these claims that aren't going through the grievance arbitration, why aren't they still available for this plaintiff to bring against these defendants? Well, it wouldn't be a claim that could be brought against the union. That claim wouldn't go against the union. That's why I quickly paused. These defendants. In that case, the complaint, the complaints would diverge against the union. It's a complaint that we haven't had proper representation with regard to the grievance the grieved issues against the producer. It would be for the things outside the grievance process. So why can't those survive? Well, to be quite frank, I don't know why, if they really were outside the collective bargaining agreement, and again, sometimes an arbitrator gets to decide, well, usually the court gets to decide the scope, the substantive scope of arbitration. If the parties have... Let's bring this to the present day. We don't need to decide what the arbitrator might have decided because we know there's a settlement agreement. Right. Okay. Today, what reason is there that the plaintiff can't bring, plaintiffs can't bring their non-grieved issues against the producer to court and bring their complaint against the union for not properly pursuing the grieved issues, why can't they bring that to court? Well, I'll address the latter, which is more of interest to the union. And that, at least first, the union settled this case for $1.4 million. That and the union notified plaintiff's counsel of that in September of 2014. If they had a problem and then the plaintiff's counsel asked for information about what that, about how the calculations were done and what scope it covered. And by the way, the plaintiffs are incorrect about their argument that it only covers episodes that post-dated the grievance filing. But that aside, we notified them of what the settlement... Well, you're already talking about things that happened after the district court's order. Right. And so if you're telling me the reason why the claim isn't alive today or because of things that happened after the district court's order, I don't see how that's anything we can deal with. I don't understand why this case doesn't go back to district court and get reassessed based on the circumstances today, because those circumstances have changed. Well, we did file our motion to dismiss on mootness grounds, which brought the settlement. Well, it doesn't mean the claim is moot. It means the circumstances have changed. So when I ask you why should those claims be dead today, you're busy talking to me about things that happened after the district court's order, none of which we really have in the record. It requires a trier of fact to sort out to see if there's anything left. Well, I think there really isn't much left factually to question. We did... But can we say that? I mean, what are you asking us to do? I'm asking you to at least cast doubt on the idea that given that they had... that the statute of limitations has run on their claims that the settlement is inadequate, that that is not a viable claim going forward against the union, because we notified them... And we're supposed to make that ruling based on what? What's in the record that tells us that? We filed our correspondence notifying plaintiffs of that. They responded, asked for information. We sent them the information.  Where's that in the record? It's in the supplemental excerpts of record that we filed, pages 1 through, I think, 129 or so. And in addition, we... And nothing happened in January. They asked for a piece of the settlement. They didn't protest its adequacy. They asked for a piece of it in January. And we, of course, said, no, we're not going to give you 25% of $1.4 million. My time has expired, I believe, but I'm happy to answer any other questions. Thank you. Good morning, Your Honors. May it please the Court. My name is Saul Brenner. I'm representing the producer, Appleese, in both cases. I'd like to address some of the questions you were addressing with SAG-AFTRA's counsel. We have a slightly different view of the scope of the union's authority. But I think the point we were making in our brief about whether the union had... is that it's a very broad release provision in the settlement. And the release provision said that the union was settling with the employer here, not only the claims that were actually brought by the union, but also any other claim that the union knew about that it could have brought. We believe that the AFTRA network code is extremely broad. And we've cited cases in our papers talking about how tort claims, statutory claims, can be subject to very broadly worded arbitration provisions, especially in a very broadly worded collective bargaining agreement, which is what we have here. So our view is that the settlement resolved this dispute. Our client, which was a producer that made substantial investments in two television programs, agreed to do these syndicated cable... Excuse me. Mr. Brenner, I'm puzzled because my view, after reading the briefs, that you also agreed that the scope of the union's ability to settle was coterminous with the collective bargaining agreement. That is, they could only settle claims which were set out in the collective bargaining agreement. True? No, that's not an accurate statement of our position. I think what we were saying was that the release provision in the settlement agreement said that we were settling and that SAG-AFTRA, on behalf of its members, was releasing all claims that it did bring or that it could have brought under the network code. So whether the collective bargaining agreement mentioned the ability of the union to settle statutory claims is irrelevant? I don't think it's irrelevant. It's a question of interpretation of the scope of the network agreement. And some of the cases we cited talk about how a very broadly worded collective bargaining agreement, even if it doesn't specifically mention statutory... Do you agree that California law applies to the interpretation of the collective bargaining agreement? I do. All right. We have some cases that have very broad language regarding settlement by the union, and they held, and I'm talking about the Sykairos case and also Hoover case, both of those held that no matter how broad the language of the collective bargaining agreement was, if it didn't mention statutory claims, the union didn't have the ability to settle statutory claims as I read them. Am I wrong in reading those? No. That's what those cases say, Your Honor. Well, then here we have a collective bargaining agreement which doesn't mention statutory claims, 203, 2802, 226, and PAGA. Why are those released? Well, those claims, we believe, even though they're not mentioned in the collective bargaining agreement, this is a very broadly worded collective bargaining agreement. But so were the broadly worded collective bargaining agreements in Sykairos and Hoover. Tell me, how do you distinguish the collective bargaining agreement you have, broadly stated, from the broadly stated collective bargaining agreements in Sykairos and Hoover? Well, Your Honor, those are different cases, and there are other cases. Different cases, okay. But don't we follow them? Well, there are other cases that we've cited in our papers. Okay. Where can I see those? Okay, so in our brief, and I, if I may. So, you know, in the. . . Just give me the page number of the brief. I'll read them on it. Okay, page 47 of our brief. All right. I'll take a look at those. So, for example, in the Andrade case, which was a 2013 district court case from the Southern District, it talked about how PAGA claims were held to be within the scope of an arbitration agreement. And that's the example of the type of analysis that we think is appropriate here. Mr. Brenner, can you give us a succinct statement of what you think this court's decision should be in this case? Absolutely, Your Honor. So in the first instance, we think, as we've argued, that the settlement rendered the controversy moot. So our first argument is that the court should dismiss the case for lack of subject matter jurisdiction because there's no longer a controversy that this court can decide. If the court disagrees with that, then we believe that the case should, that the opinion of the district court should be affirmed. The court, the plaintiffs in this case, failed to exhaust their requisite contractual grievance procedures. They should have waited until the arbitration process was concluded. There was no basis in their complaint for their allegation that, for the allegation that the union had breached its duty of fair representation as of that time. And as the district court properly found, the claims were premature. At a later point, the claims were obviously settled. But what's before this court is Judge Real's order, and we believe that order, if this court has jurisdiction to decide this appeal, should be affirmed. Thank you. Any other questions, Your Honors? I'd be happy to address them. Thank you. You don't need to start there, but before you sit down, you want to tell us why we shouldn't do what Mr. Brenner suggested. Certainly, Your Honor. Well, I think the defendants had cited the Rizza case in their brief, which was specifically overruled by the Albino v. Baca case in 2014. And in that case, they hold that the unenumerated motion under 12B is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted. I think that we believe that that is a fair statement of the law and that this was an inappropriate ruling in that the court should have made this ruling on a fuller factual record, either a motion for summary judgment or a trial, and that you can't determine the duty of fair representation claims or it's not proper on the pleadings. And certainly, we had pled sufficient facts, which would have given rise to our claim that the exhaustion was not necessary and that there was futility. And there were a number of cases that support that position. We believe that the defendants had argued that somehow, because they paid $1.4 million, that somehow that just absolved them of all liability. And as Your Honors had stated, that's far from clear from the record that that $1.4 million did, in fact, take from all of it. If we reverse the judgment of the district court, do you have a position as to whether we should remand it with instructions that the arbitrator should determine whether the statutory claims have indeed been released? I don't believe that that's necessary, Your Honor, because— Isn't it required under the CBA that the arbitration proceed to allow the interpretation of the contract by the arbitrator first? I think because the defendants have settled the claim through the arbitration proceeding, that we no longer have to proceed through arbitration that we can have this decided in court without an arbitrator. And I don't believe that we're required to go back to have the arbitrator make that decision. I think that decision should be made in court. Even if there are claims which are not settled to with the statutory claims? Yes, Your Honor. I think that those are outside of the arbitration process, the statutory claims, because— Does the arbitrator have to decide whether they're outside of the statutory process, or do we decide that as a matter of law? I think you can decide that as a matter of law, Your Honor. I can, but should we, under this arbitration agreement? I think you should, in that counsel has essentially admitted that these claims were outside of the arbitration agreement and that the Sekairos and Hoover cases support that contention and that the case that counsel cited was not even a union case, so I don't think that that case would apply in this situation. So I think that it would be proper to send it back to the district court to have that decision made. The counsel had spoken about the settlement agreement and the documents that had been put in the record, and I don't believe that those documents in any way can support the finding that all the residual payments were made to these claimants through the period of 2007 to the present, and they've made no representation to that effect. They could have made that representation, but they didn't. The counsel kind of artfully dodged that, saying, well, it wasn't as bad as what we said that it cut off in 2013, but he didn't go so far as to say, oh, we paid or we settled and we had the data for going back to 2007 and these claims were paid in full or that they paid 80% of those claims. The counsel has never made that representation. They clearly could have made the representation. They could have put forward to this court a clear record of what had been paid and why certain things were paid and not paid, and they didn't do that. So I think Your Honor is very correct in stating this is an incomplete record. There's no way that one could find, based upon this record, that all those claims had been paid or that they were part of the settlement, and I think that it's very clear that the union did breach its duty to these class members and that it should be sent back to court for factual finding and to be heard, hopefully, before a jury. Thank you, Your Honor. Thank you. We thank all counsel for your helpful arguments. The cases just argued are submitted.
judges: Farris, Clifton, Bea